UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR RONALD HAILEY, III,

        Petitioner,

                                         CASE NO. 2:12-CV-11896

   v.                              JUDGE ARTHUR J. TARNOW

                                         MAGISTRATE JUDGE PAUL J. KOMIVES

JEFFREY WOODS,

        Respondent[1].

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    E.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . 18
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
III.   NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

\*       \*       \*       \*       \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus but grant petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

       1.    Petitioner Arthur Ronald Hailey, III, is a state prisoner, currently confined at the

---

[1]By order entered this date, Jeffrey Woods has been substituted in place of Ken Romanowski as the proper respondent in this action.

Chippewa Correctional Facility in Kincheloe, Michigan.

     2.     Petitioner was convicted of carjacking, MICH. COMP. LAWS § 750.529a, armed robbery, MICH. COMP. LAWS 750.529, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne Circuit Court.  He was sentenced to concurrent terms of 10-25 years' imprisonment each for the armed robbery and carjacking convictions, and to a consecutive term of two years' imprisonment for the felony-firearm conviction.

     3.     Petitioner sought leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claim:

> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE POTENTIAL WITNESSES JEROME HAILEY AND DEVAUGHN BROWN, WHO SWEAR THEY, NOT ARTHUR HAILEY, COMMITTED THE CRIMES FOR WHICH ARTHUR WAS CONVICTED IN FILE NO. 8941. ARTHUR HAILEY MUST BE RETRIED.

     The court of appeals granted petitioner's motion seeking an evidentiary hearing on his claim and remanded to the trial court for an evidentiary hearing and decision on whether petitioner was denied the effective assistance of counsel and should be granted a new trial based on newly discovered evidence. *People v. Hailey*, No. 276423 (Mich. Ct. App. Dec. 20, 2007).

     4.     After conducting the evidentiary hearing the trial court determined that trial counsel had not been ineffective and denied the motion for a new trial.

     5.     Petitioner then filed a claim of appeal in the Michigan Court of Appeals which included the following two claims:

> I.    TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE POTENTIAL WITNESSES JEROME HAILEY AND DEVAUGHN BROWN, WHO SWEAR THEY, NOT ARTHUR HAILEY, COMMITTED THE CRIMES FOR WHICH ARTHUR WAS CONVICTED

IN FILE NO. 8941. ARTHUR HAILEY MUST BE RETRIED.

II.     ARTHUR HAILEY IS ENTITLED TO RETRIAL IN FILE NO. 8939
        BECAUSE THE PHYSICAL EVIDENCE USED TO CONICT HIM - TWO
        GUNS, AND VARIOUS AUTO PARTS - SHOULD HAVE BEEN
        EXCLUDED AS THE FRUIT OF AN ILLEGAL POLICE SEARCH.
        TRIAL COUNSEL WAS INEFFECTIVE FOR NOT MOVING TO
        SUPPRESS.

The Michigan Court of Appeals affirmed petitioner's convictions in a 2-1 unpublished

decision. The majority gave two reasons for rejecting his claim of ineffective assistance: (i) that

counsel's performance was not deficient because it was not unreasonable for her to forgo

investigating the "highly unlikely scenario" that Mr. Hailey's brother and friend might admit that

they, not he, committed the crimes on which he stood trial, and (ii) that in any event the error was

not prejudicial because Mr. Hailey was not "deprived of a substantial defense" because he himself

gave testimony that could have allowed the jury to infer that the friend and his brother (Jerome)

were guilty even though the victim of the robbery/carjacking identified defendant Arthur Hailey as

one of the two perpetrators. *People v. Hailey*, No. 276423, 2009 WL 5194989 (Mich. Ct. App. Dec.

17, 2009). The victim never identified the second perpetrator.

        6.      Petitioner sought leave to appeal this issue to the Michigan Supreme Court.  The

Supreme Court initially granted leave to appeal on the ineffective assistance of counsel claim, but

after oral argument the Court vacated its order granting leave to appeal and unanimously voted to

deny the appeal because it was no longer persuaded that the questions presented should be reviewed

by the Court. *See People v. Hailey*, 488 Mich. 1032, 792 N.W.2d 748 (2011)(unpublished table

decision).

        7.      Petitioner, proceeding through counsel, filed the instant application for a writ of

habeas corpus on April 27, 2012.  As grounds for the writ of habeas corpus, he raises the claim that:

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE POTENTIAL WITNESSES JEROME HAILEY AND DEVAUGHN BROWN, WHO SWEAR THEY, NOT ARTHUR HAILEY, COMMITTED THE CRIMES FOR WHICH ARTHUR WAS CONVICTED. THE MICHIGAN COURT OF APPEALS RULING TO THE CONTRARY WAS AN OBJECTIVELY UNREASONABLE APPLICATION OF STRICKLAND V. WASHINGTON.

8.        Respondent filed an answer on October 3, 2012.  Respondent contends that petitioner's claim does not entitle him to habeas relief.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the June 23, 2006, robbery and carjacking of Eric McNary in Detroit.  The evidence adduced at trial is accurately summarized in petitioner's brief in support of his habeas application:

At about 11:40 p.m. on June 23, 2006, Eric McNary was at a gas station at Harper and Cadieux Streets in Detroit, pumping gas into his blue, 2001 Jeep Grand Cherokee, when two men approached him. While one asked for change, the other put a gun to his ribs and said, "Don't move." The first man emptied McNary's pockets, and the second man told him to run. He did, leaving his Jeep packed with band equipment behind.

The second man, said McNary, was 5'10' or 6' tall, about 150 pounds, dark-complected with a "tight beard," and wearing a winter coat with a hood and fur collar. Though the hood was up, McNary "could see right inside" it. The gun the man held was an Uzi-style, short submachine gun.

**** 

In the early morning of July 6, 2006, Mary Williams was at a gas station at McNichols and Hubble Streets in Detroit. She had just finished pumping gas into her black Ford Taurus when a van pulled up in front of her, and a man jumped out. The man, who was wearing a winter coat with a fur-lined hood, ran over to her, pointed a gun at her head, and demanded her car keys. She said no and ran. He caught her, pushed her down, and grabbed her keys. Before she could get up, someone had driven away in her car.

Mary Williams described her assailant as a "short black medium complexioned male."

**** 

On July 7, 2006, in response to an anonymous tip, Harper Woods police officers went to the Eastland Mall and arrested eight people for possessing three carjacked vehicles. Mary William's Ford Taurus was one of the three.

Defendant-appellant Arthur Hailey, who had the keys to a stolen Chrysler

4

Pacifica, was among the eight arrested.

*****

Four days previous, on July 3, 2006, Police Officer Melvin Johnson had stopped Arthur Hailey for failing to signal a turn. When it turned out that Mr. Hailey was missing a driver's license and had outstanding warrants, Officer Johnson arrested him and impounded his car, a white Dodge Intrepid.

*****

Sergeant David Pomeroy of the Detroit Police Department Robbery Task Force was one of the police officers who, on July 7, went to the Eastland Mall in response to the carjacked vehicles arrests. Pomeroy "took over" the arrest scene. Upon learning that Arthur Hailey's Dodge Intrepid had been impounded "some time ago" by the Detroit Police Department, Pomeroy directed a subordinate, Officer Troy Debetes, to the impound lot and "inventory" the Intrepid.

Debetes did as told. Upon checking under the Intrepid's hood, he found, sitting on the engine block, two guns: a Mac-11 rifle and a Glock automatic pistol. These would be the guns Mr. Hailey would be accused of possessing in File 8939. Eric McNary would also identify the Mac-11 as the gun used in the Jeep carjacking.

As a result of Debetes's search, Pomeroy would later order evidence technicians to "process" the Intrepid. As a result, he learned that some of the parts on Mr. Hailey's car had been taken from another, carjacked Dodge Intrepid. Mr. Hailey would also be accused, in file 8939, of possessing the stolen Intrepid and stolen Pacifica.

*****

On July 8, 2006, Mary Williams viewed a live lineup but identified someone other than Arthur Hailey as her assailant. The next day, the police released Mr. Hailey from custody.

On July 18, 2006, a police officer showed Eric McNary four arrays of six photos. The officer told McNary that it was "okay" to make a "bad pick" that if he chose someone other than "the suspect" the police would not charge that person. McNary pointed to Arthur Hailey's photo. McNary would identify Arthur Hailey again at trial.

Also on July 18, the police officer showed Mary Williams two arrays of six photos. She, too, now named Arthur Hailey as her assailant. She, too, would identify Mr. Hailey again at trial (though in the end the jury would be unpersuaded).

*****

Arthur Hailey's girlfriend, Angelique Washington, was also among the eight arrested at the Eastland Mall. Called as a prosecution witness, she denied telling the police that the Mac-11 was Arthur's and that he rented it out for use in robberies. She had never *seen* him lend or rent the gun, she had only heard others talk about it. She had seen a gun in Arthur's house, but others had access to it, too. In any event, the Mac-11 offered in evidence by the prosecution was not the same gun she had seen at Arthur's house; that gun was smaller.

*****

Arthur Hailey testified in his own defense. He denied participating in the

5

carjackings and robberies or possessing the guns. He admitted buying the car parts from a friend for $50, but denied knowing they were stolen. He did not own a jacket with fur around the hood.

Arthur Hailey further testified that he did not remember where he was on June 23, the night Eric McNary's blue Jeep was carjacked, but that he did remember a summer night, maybe June 23, when his brother Jerome Hailey and cousin Devaughn Brown arrived home with a blue Jeep Grand Cherokee. Jerome and Devaughn tried to bring some musical instruments into the house, but Jerome and Arthur's mother forbade it.

Br. in Supp. of Pet., at 3-6.

Following petitioner's conviction, on remand from the Michigan Court of Appeals, the trial court held an evidentiary hearing on petitioner's motion for a new trial based on ineffective assistance of counsel and newly discovered evidence. The evidence adduced at that hearing is likewise accurately summarized in petitioner's brief:

Devaughn Brown testified that he was a friend of Arthur and Jerome Hailey. He was currently serving prison sentences for other carjackings and robberies he committed together with Jerome Hailey. He and Jerome Hailey testified that they were the ones who carjacked the blue Jeep Grand Cherokee and robbed the car's owner. Jerome was armed with a gun, a Mac-11. The robbery took place at about 11:30 p.m. or 12:00 a.m. at a gas station (either an Amoco or a BP) at the intersection of Cadieux and Harper streets in Detroit. The man they robbed was caucasian and about the same height as Devaughn (5'8" or 5'9" tall). When they spotted him, he was pumping gas. They decided to rob him. Devaughn allegedly approached the man to distract him by asking for change while Jerome came from behind. Jerome pointed the gun to the man's stomach and told him to put his hands on the hood. Jerome was wearing a coat with a fur-lined hood to hide his face. Jerome took the man's keys; Devaughn took his wallet and cell phone. Jerome told the man to run, and he did. Jerome drove off in the man's Jeep. Devaughn followed in Jerome's Chevy.

Jerome drove to 12050 Nashville, where Jerome's brother Arthur, his mother, and sisters lived. Inside the back of the Jeep, under a tarp, were musical instruments and equipment. Intending to stash the equipment inside his mother's house, Jerome knocked on the door. Jerome's mother and brother Arthur appeared at the door. Jerome's mother told Jerome and Devaughn to leave. They did, taking the musical equipment to the house of Jerome's "female companion" and unloading it there. The next morning they took the equipment - at least two amplifiers, three or four guitars, a keyboard stand, and a bass drum - to a pawn shop. Unable to get the price they wanted for it at the pawn shop, they eventually sold the equipment to someone Devaughn's cousin knew. The Jeep they abandoned in the backyard of a vacant

6

house after stripping it of its wheels.

Devaughn learned that Arthur had been convicted of the Jeep Cherokee charges only after both were in prison. Arthur wrote Devaughn a letter. Devaughn decided to come forward. Before testifying, he received a lawyer's advice about the possible consequences. He knew he could receive a longer sentence than the ones he was currently serving. He also knew he had the right to refuse to testify. Nevertheless, had Arthur's trial lawyer asked him to be a witness for Arthur, he claimed he would have consulted his own lawyer but eventually "done the same thing that I'm doing today."

****

Jerome Hailey, Arthur Hailey's brother, was, like Devaughn Brown, serving prison sentences for robberies he and Devaughn committed together. He testified that it was he, not his brother Arthur, who was the blue-Jeep gunman. He and Devaughn had gone to a BP gas station at Harper and Cadieux with the plan to rob somebody. Jerome was armed with his Mac-11 gun. They saw the blue Jeep Cherokee at a gas pump. Jerome told Devaughn to ask the Jeep's owner a white man in his 30's and about the same height as Jerome (6'1"), for money. While Devaughn distracted the man, Jerome, wearing a doughboy coat with a fur lined hood to cover his face, came around the gas pump and put his gun to the man's back. He grabbed the man's keys, and told Devaughn to grab the man's money and wallet. That accomplished, Jerome told the man to run.

Jerome jumped in the Jeep. A cup of coffee the man had set on the top of the car fell as Jerome pulled off. He drove to his mother's house on Nashville. Devaughn followed in Jerome's car, a Chevy Caprice.

There was musical equipment in the back of the Jeep, including a drum set, equalizers, and a microphone with wires. Devaughn popped the Jeep's hatch, preparing to unload the equipment, while Jerome went to the door and knocked. His mom answered the door, took a look at the Jeep and its contents, and told Jerome to "get the hell on." Arthur was behind her at the end of the steps.

Jerome and Devaughn took the Jeep to a companion's house on Warren. They took the equipment inside, and Jerome went to sleep. The next morning, he sold the musical equipment to a friend.

Jerome ended up putting his Mac-11 under the hood of his brother Arthur's car. Needing to get it out of his mother's house, and with his own car parked elsewhere and Arthur's there in his mother's backyard, he chose Arthur's car as the place to hide it. He planned to retrieve the gun later that day, but in the meantime Arthur drove the car and got pulled over by the police. Jerome hadn't had the chance to warn him.

Like Devaughn, Jerome had consulted a lawyer before testifying. He knew he faced the risk of a longer sentence, and that he could refuse to testify, but he chose to testify anyway. He claimed that he would have testified at Arthur's trial if Arthur's lawyer had asked. In fact, he remembered telling his own lawyer that he wanted to testify for Arthur. His lawyer, Richard Powers, had told him that it was his decision to make.

****

Jerome and Arthur's mother, Karen Simmons, remembered a night two summers previous when her son Jerome came knocking at her door, a blue Jeep Cherokee parked in her driveway. She went to the door. Her other son, Arthur, who had been downstairs, also went to the door.

Ms. Simmons opened the door and saw Jerome and the Jeep. The Jeep's "hood" was up. She asked Jerome what the hell he thought he was doing, and told him to get the hell away from her house.

****

Carolyn Rand was Arthur Hailey's trial lawyer. In that role, she had received discovery documents that included a police report of a statement Arthur Hailey gave the police two days after his arrest. In that statement, Arthur told the police he'd seen the blue Jeep Cherokee when his brother Jerome and friend Devaughn tried to bring drum sets from the Cherokee into his mother's home. Arthur had also told her that he had nothing to do with the Cherokee, and that Jerome and Devaughn were the ones who had carjacked it. Moreover, she believed him. Nevertheless, she did not talk to either Jerome or Devaughn about being a witness for Arthur. She knew that Jerome and Devaughn were on trial for similar crimes. She also knew that, if she were representing a client in Jerome or Devaughn's position, she would advise that client not to testify. She would have never expected them to come forward. She had been practicing criminal law for eight years and had never seen such a thing happen.

She did not call Karen Simmons as a witness because Ms. Simmons had been reluctant even to discuss the fact that her son was on trial. She had the impression that Ms. Simmons was reluctant to take sides against her son Jerome.

****

Richard Powers was Jerome Hailey's lawyer in the multiple carjacking cases Jerome had in 2006. He did not remember Jerome telling him he had committed the crime with which Arthur was charged, or telling him that he wanted to admit guilt at Arthur's trial. Such a thing would have been unusual, and Powers would have remembered it. However, Jerome might have told him something more general - say, that Jerome wanted to be a witness at Arthur's trial - and he might have forgotten that. He had represented many clients since Jerome, and he admitted having a hard time remembering even Jerome's first name.

****

Eric McNary was the owner of the blue Jeep Cherokee in question. It was he who was robbed at gunpoint at a BP gas station late at night on June 23, 2006. He now viewed a photographic array prepared by the prosecutor that included photos of Jerome Hailey, Devaughn Brown, and Arthur Hailey. As at Arthur's trial, he identified Arthur Hailey as the gunman.

Since the trial, Mr. McNary had viewed Arthur's picture on a website kept by the Michigan Department of Corrections, the Offender Tracking Information System (OTIS).

Br. in Supp. of Pet., at 6-11.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

9

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529

U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Ineffective Assistance of Counsel*

In petitioner's only habeas claim, he contends that counsel was ineffective for not contacting his brother who had allegedly committed the crimes, along with a family friend, who were both willing to come forward and testify at trial in his defense. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect

11

the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

12

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.      *Analysis*

Petitioner's counsel was not deficient for not contacting Jerome Hailey or Devaughn Brown

to ask them to testify at petitioner's trial. After the evidentiary hearing the trial court issued an

opinion reasoning why counsel had not acted deficiently:

> Defendant alleges that trial counsel was ineffective for failing to investigate

13

potential witnesses Jerome Hailey and Devaughn Brown. To establish ineffective assistance of counsel, a defendant must show (1) that his attorneys performance was objectively unreasonable in light of prevailing professional norms, and (2) that, but for the attorneys error or errors a different outcome probably would have resulted. Counsel's overall performance is that which is reviewed, and a defendant must overcome the presumption that the challenged action or inaction was trial strategy.

Having made a comprehensive review of the record this court finds that trial counsel was not ineffective because it was reasonable for her to assume that Devaughn Brown and Jerome Hailey----pending carjacking charges of their own---wouid not have testified at defendant's trial and admitted to more such conduct. Moreover, even if counsel should have interviewed these two alleged witnesses, defendant cannot prove prejudice because (a) It is doubtful whether either witness actually would have testified; (b) if they had testified and were believed, their testimony would not have substantially benefited the defendant. *People v Bass*, 223 Mich App 241., 252-53 (1997) vacated in part on other grounds 457 Mich 866 (1998).

Defendant's trial attorney made a reasonable decision not to pursue Brown and Jerome Hailey's testimony, In *Strickland v Washington*, 466 U.S. 668, 690-01 (1984), the United States Supreme Court opined that "strategic choices made after a thorough investigation of law arid facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690.

"In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Id.* at 691.

Here, defendant and his attorney discussed trial strategy regarding what witnesses would be called. Although defendant claimed that his brother and Brown had committed the carjacking, he never suggested calling either one as a witness. Ms. Rand was In contact with the Hailey brothers' parents and neither one of them suggested that Jerome might testify for Arthur nor did they ask her to investigate that possibility.

Moreover, Attorney Rand having practiced criminal law for eight years, said she would advise any client in Devaughn Brown or Jerome Halley position not to further incriminate himself, especially when similarly related charges were pending. Similarly, Jerome's attorney (Richard Powers) testified that he had never in eighteen years had a client indicate a willingness to take a rap for someone else, and would have advised any such client not to do so.

*People v. Hailey,* No. 06-008941, at 10-11 (Wayne County, Mich. Cir. Ct. Apr. 29, 2009).

Counsel's decision was reasonable in light of the fact that Jerome and Devaughn were

14

awaiting their own trials for similar charges, and therefore in all likelihood would not come forward and incriminate themselves while they were awaiting their own trials. Counsel relied on her eight years of experience practicing criminal law in determining whether or not to try and contact Jerome and Devaughn to testify. "Among the factors relevant to deciding whether particular strategic choices are reasonable are the experience of the attorney..." *Strickland v. Washington*, 466 U.S. 668, 681 (1984). Counsel testified at the evidentiary hearing that petitioner never suggested to her before or during trial that she should try and contact Jerome or Devaughn to ask them to testify at his trial. *See* Evid. Hr's Tr. 3/20/08 at 8. Even when petitioner had met with counsel to talk about which witnesses to call during trial, he did not suggest that Jerome or Devaughn would testify. Only after Jerome and Devaughn had been convicted and sentenced to lengthy prison terms did they apparently decide to come forward and say that they would have testified. Counsel also testified that she had interviewed  petitioner's mother and father, and that they also did not suggest that she contact Jerome or Devaughn to solicit their testimony. *Id.* at 9. Counsel knew that both men were on trial at the time and had attorneys representing them who would have, in all likelihood, advised them not to come forward and confess to a crime similar to the ones for which they were on trial. Jerome Hailey's attorney was called at the evidentiary hearing and could not recall his client telling him that he wanted to testify at his brother's trial, and stated that even if that would have happened he would have advised his client against doing so due to the fact that it could potentially impact his own plea or sentencing agreement. *Id.* at 16-17.

"In assessing counsel's investigation, we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at

15

the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citing *Strickland,* at 688). From counsel's perspective it was not unreasonable for her not to contact petitioner's brother and family friend. It would be highly unlikely and unusual that either man would have come forward and confessed to the crime while they themselves were on trial for similar crimes.

But even if trial counsel's performance was deficient for not investigating further into the allegation that petitioner's brother and friend had committed the crimes, petitioner still cannot show that he was prejudiced. Not only is it highly unlikely that either man would have come forth and incriminated themselves while they awaited trials of their own, but also evidence was introduced at trial showing that petitioner rented out his Mac-11 gun for use in carjackings and that he had accepted gas bought by stolen credit cards obtained from various carjackings. The prosecutor stated at the evidentiary hearing that even if a jury believed that petitioner's brother and friend had actually committed the crime and not petitioner, he was still going to charge him on an accomplice theory because of two witnesses who would testify to the fact that petitioner rented out his Mac-11 to be used in a string of carjacking crimes and receiving stolen goods. *See* Evid. Hr'g Tr. 4/9/08 at 21.

The prejudice prong under *Strickland* requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Petitioner has not shown that but for counsel's failure to contact his brother and family friend that the result of the proceeding would have been different. The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Choosing not to contact petitioner's brother and friend because of her conclusion that the two men would not agree to come forth and incriminate themselves while they awaited their own

16

trials for similar crimes was an objectively reasonable decision by trial counsel.

It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Under § 2254(d) of the AEDPA, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The question that must be asked on habeas review is not whether this Court would have come to the same conclusion as the trial judge, but rather if the reviewing state court's decisions "have resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C.§ 2254(d)(2). The judge at the evidentiary hearing was in the best position to make credibility determinations regarding the testimony of Jerome and Devaughn, and deference must be given to the trial judge's conclusions based on the testimony that judge heard.

In *Metrish v. Lancaster,* The Supreme Court reinforced the "difficult to meet" standard that, in order "To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013) (Internal quotation omitted). Although this Court may not agree with the conclusions of the state trial and appellate courts that had Jerome and Devaughn been contacted by defense counsel they would not have testified, and that it would not have made a difference if they

17

had testified, prejudice cannot be shown because it is so highly unlikely that either man would have come forth and incriminated themselves while they awaited trials of their own for similar crimes. There is room for "fairminded disagreement" in regards to the state appellate court's conclusion as it pertains to the reasonableness of counsel's decision not to contact Jerome and Devaughn to ask for their testimony and therefore petitioner is not entitled to habeas relief on this claim.

E.    *Recommendation Regarding Certificate of Appealability*

    1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is entitled to a certificate of appealability.  Because it is clear that trial counsel could have resolved the issue as to whether or not petitioner's brother and friend would or would not have testified with very little effort (both men were incarcerated at the time, and therefore easily found), but did not, petitioner's claim is reasonably debatable.  Accordingly, the

Court should conclude that petitioner is entitled to a certificate of appealability.

F.      *Conclusions*

1.      I conclude that the determination by the state courts that petitioner was not prejudiced by the fact that Jerome Hailey and Devaughn Brown did not testify at his trial and state that they and not petitioner committed the crime is, on its face, unreasonable. It is obvious that had these two so testified at trial there is a possibility that the result of the trial would have been different. The trial judge's statement, without explanation, that he believed that petitioner would not have been prejudiced even if Jerome Hailey's and Devaughn Brown's testimony had been believed, is unreasonable.

2.      However, I also conclude that the determination of the state courts that defense counsel did not fail in her duty to provide her client effective assistance was reasonable because the state courts could reasonably conclude that neither Jerome Hailey nor Devaughn Brown would have agreed to testify that they and not petitioner had committed the crime even if petitioner's counsel had contacted them in person and that their contrary testimony at the evidentiary hearing could properly be rejected by the state trial judge as not credible in part because their supposed willingness to testify was not expressed to anybody until after they themselves were convicted and incarcerated on similar offenses.

3.      I also conclude that the state courts could reasonably conclude that defense counsel acted reasonably in not contacting Jerome Hailey or Devaughn Brown in person because (a) she had reviewed with petitioner before trial the witnesses to be called and he did not suggest then or at any later time that these two should be called, (b) counsel had talked with the mother of Arthur (petitioner) and Jerome Hailey; she did not give any indication that her son Jerome wanted to testify,

20

she was reluctant even to discuss the fact that her son was on trial and she herself did not want to take sides against Jerome, (c) she could rely on her own eight years of experience as a criminal defense lawyer to conclude that it would be highly unlikely that Jerome Hailey or Devaughn Brown would testify and admit that they and not petitioner committed the crime when they were facing trial themselves on similar charges, (d) that any competent defense counsel would also tell a client in such a situation not to testify and (e) Jerome Hailey's lawyer testified that he did not recall his client telling him that he had committed the crime with which petitioner was charged, much less that he wanted to testify and admit his guilt at petitioner's trial.

4.     In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should nevertheless grant petitioner a certificate of appealability.

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: June 25, 2013



**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 25,2 013                    s/ Lisa C. Bartlett
Case Manager